IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CEDRICK L. JACKSON, :

    Plaintiff, :

vs. : CA 11-0198-C

MICHAEL J. ASTRUE, :
Commissioner of Social Security,
     :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 22 & 23 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the December 12, 2011 hearing before the

1

Magistrate Judge, it is determined that the Commissioner's decision denying plaintiff benefits should be affirmed.[1]

Plaintiff alleges disability due to post-traumatic stress disorder ("PTSD"). The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.**
>
> **2. The claimant has not engaged in substantial gainful activity since March 1, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).**
>
> . . .
>
> **3. The claimant has the following severe impairments: depression/anxiety; post traumatic stress disorder (PTSD), by history; migraines; mild hearing loss in the right ear; and chronic knee and ankle pain (20 CFR 404.1520(c) and 416.920(c)).**
>
> . . .
>
> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**
>
> . . .
>
> **5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), in function by function terms (SSRs 83-10 and 06-8p), with certain non-exertional restrictions associated with that level of**

---

[1] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 22 & 23 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**exertion. The claimant's specific physical capabilities during the period of adjudication have been the ability to perform work at the light exertional level. The claimant's specific mental capabilities during the period of adjudication have been the ability to perform unskilled work.**

. . .

The claimant testified that [he] has bad nerves, depression, and anxiety, which results in [] limitations on his ability to perform unskilled work. He is on medication that keeps him calm but it "lingers with him just like if he drank alcohol the night before."

. . .

While the claimant was hospitalized at the VA from April 19-26, 2007, for depression and thoughts of suicide, he underwent a mental health evaluation on April 26, 2007. The results of this evaluation indicated that the claimant does not have a diagnosis of severe and persistent mental illness (examples given included schizophrenia, bipolar disorder, major affective disorder, or severe PTSD). The results also noted that the claimant had not had high hospital use evidenced by over 30 days of psychiatric hospital care during the previous year or three or more episodes of psychiatric hospitalization in the previous year; he did not have a severe functional impairment where he is neither capable of successful and stable self-maintenance in a community living situation nor able to participate in necessary treatments without intensive support; and he will not be inadequately served by conventional clinic-based outpatient treatment. During his hospital stay, the claimant was treated with medications, and it was noted that his symptoms quickly started to improve with resolution of vegetative symptoms, auditory hallucinations, and paranoid ideation. His mood also improved, although some residual anxiety remained. (Exhibit 6F). The claimant has continued to be followed by various mental health care providers at the VA; and has been treated with therapy and medication. Dr. Dansak noted on April 23, 2009, that the claimant had a calm mood and was mildly to moderately depressed. He had normal stream and content of thought, and his memory was grossly intact. (Exhibit 16F).

The claimant underwent a consultative psychological evaluation on November 23, 2009, with Nina E. Tocci, PhD, MSCP. . . . During the mental status examination, Dr. Tocci noted . . . [h]e had good eye contact, responsive facial expressions, and a cooperative attitude toward the examiner. . . . His affect was appropriate, normal, and stable; although he

described his mood as "depressed." The claimant was oriented to time, place, person, and situation. Dr. Tocci noted the claimant demonstrated fair attention and concentration. . . . The claimant demonstrated thought content appropriate to mood and circumstances and a logical thought organization. Dr. Tocci wrote: "he ideates about suicide 'not to my knowledge (RQ) maybe I've taken something and didn't take enough.'" He was vague and circular. She stated that he finally stated that he took too much Aleve in the past secondary to anxiety and panic attacks but "that's been so long." He denied intent "but sometimes this depression and anxiety it takes a toll on you." He denied homicidal ideations, intent, and gestures. The claimant told Dr. Tocci that he hears voices, but cannot make out the words or content and see[s] shadows out of the corner of his eyes. He denied delusions. He has a variable appetite with weight loss, crying spells, and difficulty getting to and staying asleep. He experiences anxiety and panic attacks (has increasing heart rate, is jumpy at sudden noises, and [has] "trouble breathing sometimes like I'm being smothered"). The claimant added that he has flashbacks to combat when he hears loud noises. He demonstrated some insight into his behavior. He evinced fair social judgment in his consideration of two social dilemmas. Specifically, when asked what he would do if he found an envelope in the street that had been sealed, addressed, and with a new stamp on it, he stated, "take it to the post office I guess." When asked what his actions would be upon seeing smoke and fire in a theatre, he stated, "try to get out or tell somebody." He can make informed personal and financial decisions. In general, he appeared to be functioning within the borderline range of intellectual ability. During the day, the claimant reported that he "stay[s] in my room, eat back in my room, may do a word puzzle, read something, sometimes I come up and watch television." He is able to perform activities of daily living without assistance. . . . He does not have friends or drive. . . . Dr. Tocci noted that the validity scales indicate that the claimant became fatigued and/or lost interest in the questions over the last half of the protocol. She added that the high F suggests that he is making a plea for help or exaggerating symptoms. In general, the protocol did not appear to be a valid representation of his personality. Throughout testing, the claimant started subtests while the directions were still being given and missed subtle cues to refrain from starting. It was necessary to direct him several times. In general, he evinced fair effort. Dr. Tocci's diagnostic impression was that the claimant has Depression, not otherwise specified (NOS), and a current and past year Global Assessment of Functioning Score of 65. (Exhibit 18F).

According to the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV), Fourth Edition, the GAF scale is used to report an individual's

overall level of functioning. A rating of 61-70 on the GAF scale would indicate "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but generally functioning pretty well, has some meaningful interpersonal relationships."

Dr. Tocci also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form, and found the claimant has the following restrictions: no limitation in the ability to understand and remember simple instructions; no limitation in the ability to carry out simple instructions; no limitation in the ability to make judgments on simple work-related decisions; moderate limitation in the ability to understand and remember complex instructions; moderate limitation in the ability to carry out complex instructions; moderate limitation in the ability to make judgments on complex work-related decisions; no limitation in the ability to interact appropriately with the public; mild limitation in the ability to interact appropriately with supervisors; mild limitation in the ability to interact appropriately with co-workers; and moderate limitation in the ability to respond appropriately in usual work situations and to changes in a routine work setting. (Exhibit 18F).

In terms of the claimant's alleged mental impairments, the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The detailed VA records indicate that the claimant does not meet the PTSD criteria and the other disorders of anxiety disorder, NOS, and major depressive disorder pose only mild occupational limitations. (Exhibit 2F). Although the claimant has alleged side effects from the use of medications, the medical records, such as office treatment notes, do not corroborate these allegations. The claimant is treated for anxiety/depression, but lives with his girlfriend and attends church. He testified that he does not go anywhere, but acknowledged that there is "nowhere to go in Jackson." The undersigned finds that he is capable of performing unskilled work.

. . .

The undersigned acknowledges that the claimant's vocational rehabilitation counselor noted on January 19, 2010, that it is currently not feasible for the claimant to participate in training, education, and job placement. (Exhibit 23F). However, the claimant testified that he has been put into an extended program with vocational rehabilitation and he wants to learn how to be a mortician.

5

As for the opinion evidence, the undersigned assigns significant weight to Dr. Tocci's findings in the consultative psychological evaluation report in Exhibit 18F. As a psychologist, Dr. Tocci is well qualified to evaluate the claimant's impairments and form conclusions regarding his mental symptoms, conditions, and resulting limitations; and her conclusions are consistent with and supported by [] substantial evidence contained in the record, as well as by her own objective clinical examination findings. The claimant's representative alleged that Dr. Tocci's opinion should be given less weight in part because it is internally inconsistent, inconsistent with Dr. Dansak's treatment records in Exhibit 15F, and contrary to Dr. Kidd's assessment in Exhibit 19F. (Exhibit 33E). However, the undersigned finds that Dr. Tocci's report is not internally inconsistent as alleged, because Dr. Tocci explained why the results of testing appear to underestimate his academic achievement and intellectual ability and why the personality profile was invalid. Dr. Tocci indicated that the claimant reported that he graduated from high school, obtained a truckers' license, and was in the Army and the Army Reserves. However, the scores obtained on the WRAT-3 and WAIS-IV are not indicative of someone with those accomplishments. (Exhibit 18F). Dr. Tocci further noted that the claimant had difficulty concentrating, listening, and focusing on tasks; however, he appears to have the cognitive ability to learn, complete, and perform simple tasks. These findings are consistent with her responses in the Medical Source Statement (Mental) form she completed. Specifically, she found the claimant has no limitation in the ability to understand and remember simple instructions; no limitation in the ability to carry out simple instructions; no limitation in the ability to make judgments on simple work-related decisions; moderate limitation in the ability to understand and remember complex instructions; moderate limitation in the ability to carry out complex instructions; and moderate limitation in the ability to make judgments on complex work-related decisions. (Exhibit 18F). Dr. Dansak's treatment records in Exhibit 15F consist of a Mental Residual Functional Capacity Questionnaire dated July 28, 2009, in which he found that the claimant had marked restriction of activities of daily living; marked difficulty in maintaining social functioning; frequent deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner (in a work setting or elsewhere); and repeated (3) episodes of deterioration or decompensation in a work or work-like setting which cause the claimant to withdraw from that situation or to experience exacerbation of signs and symptoms. Based upon his evaluation of the claimant's psychiatric status, Dr. Dansak opined that the claimant has moderate limitation [in his ability] to understand, carry out, and remember instructions in a work setting; marked limitation to respond appropriately to supervision in a work

6

setting; marked limitation to respond appropriately to co-workers in a work setting; and mild limitation to perform simple tasks in a work setting. (Exhibit 15F). The undersigned finds that Dr. Dansak's opinion in Exhibit 15F is internally inconsistent in that, for example, he found that the claimant would have frequent deficiencies of concentration that would result in failure to complete tasks in a timely manner[,] yet, he only assigned the claimant moderate limitation in the ability to understand, carry out, and remember instructions. Additionally, Dr. Dansak's opinion is not supported by the substantial evidence of record. Dr. Dansak found the claimant has repeated (3) episodes of decompensation lasting at least 2 weeks; however, there is no documentation of any such episodes in the record. Finally, Dr. Dansak's opinion in Exhibit 15F is not supported by his own treatment records. Dr. Dansak's treatment record from July 28, 2009, the date he completed the form in Exhibit 15F, does not reflect objective findings on examination to support the limitations assigned. For example, Dr. Dansak observed that the claimant was alert, cooperative, oriented times four, casually dressed, and adequately groomed. He reported the claimant had an appropriate affect and a calm and pleasant mood. Dr. Dansak added that the stream and content of the claimant's thoughts were normal, memory and cognition were grossly intact, no suicidal or homicidal ideas or plans were voiced, and insight and judgment were good. Dr. Dansak also indicated that the claimant was receptive to learning. (Exhibit 13F).

. . .

**6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).**

. . .

**7.     The claimant was born on November 16, 1967 and was 38 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).**

**8.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).**

**9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

**10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).**

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the undersigned asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have be able to perform the requirements of representative occupations such as cleaner/housekeeper (DOT #323.687-014), with approximately 5,004 available positions in the state of Alabama and approximately 341,370 available positions in the national economy; children's attendant (DOT #349.677-018), with approximately 1,005 available positions in the state of Alabama and approximately 96,123 available positions in the national economy; [and] security guard (DOT #372.667-034), a semi-skilled job with approximately 7,213 available positions in the state of Alabama and approximately 527,680 available positions in the national economy.

> The undersigned notes that the claimant's representative asked the vocational expert whether the hypothetical individual could perform any of the claimant's past relevant work or any other work that exists in significant numbers in the national economy with the limitations set forth in Dr. Dansak's mental residual functional capacity assessment in Exhibit 15F. The vocational expert responded that the limitations set forth in this exhibit [would] restrict the individual to less than sedentary work. However, the undersigned *gave little weight* to Dr. Dansak's evaluation, as discussed above.
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rule.
>
> **11. The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2006, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).**

(Tr. 17, 19, 20, 20-21, 22, 22-23, 25-27, 27 & 28-29 (some emphasis supplied).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

In all Social Security cases, the claimant bears the burden of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Once the claimant meets this burden, as here, it becomes the

9

Commissioner's burden to prove that the claimant is capable, given his age, education and work history, of engaging in another kind of substantial gainful employment which exists in the national economy. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that, within the framework of the grids, he can perform those unskilled light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[2]

In this case, the plaintiff's sole contention is that the ALJ erred in according more weight to the opinion of the consulting psychologist than plaintiff's treating psychiatrist and by failing to articulate what weight, if any, he was assigning to the opinion of plaintiff's treating psychiatrist. (*See* Doc. 15.)

The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's]

---

[2] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

symptoms, diagnosis and prognosis, what [the claimant] can still do despite [the] impairment(s), and [the claimant's] physical or mental restrictions." *See, e.g.*, 20 C.F.R. § 404.1527(a)(2) (2011). The regulations provide that regardless of the source of the medical opinion, the Commissioner will evaluate every opinion it receives. *See, e.g.*, 20 C.F.R. § 404.1527(d). In general, the Commissioner will give more weight to the opinion of a medical source who has examined the claimant than the opinion of a non-examining source. 20 C.F.R. § 404.1527(d)(1); *see Syrock, supra*, 764 F.2d at 835 ("'The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion.'").

In recognition of the Commissioner's regulations, the Eleventh Circuit has determined that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

> The ALJ must clearly articulate the reasons for giving less weight to the opinion of the treating physician, and the failure to do so is reversible error. We have found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.

*Id*. (internal citations omitted). Additionally, the Eleventh Circuit requires an ALJ to "'state specifically the weight accorded to each item of evidence and why he reached that decision.'" *Reese v. Sullivan*, 925 F.2d 1395, 1397 (11th Cir. 1991), quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Stated differently, in assessing the medical

evidence in a particular case, an ALJ is "required to state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (citation omitted); *see also McNamee v. Social Security Administration*, 164 Fed.Appx. 919, 2006 WL 227586, *3 (11th Cir. Jan. 31, 2006) ("Finally, '[i]n assessing the medical evidence the ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor.'"); *see Wiggins v. Schweiker*, 679 F.2d 1387, 1389 & 1390 (11th Cir. 1982) ("[T]he opinion of the ALJ in the present case does not mention Dr. Mracek, let alone reveal what weight, if any, the ALJ gave to the treating physician's evidence. . . . The ALJ's opinion, thus, not only fails to mention the appellant's treating physician and the weight, if any, the ALJ gave to the treating physician's evidence and opinion, but also strongly suggests that the ALJ did not accord the opinion of the appellant's treating physician the weight required by law. At the very least, we are unable to determine whether the ALJ applied the proper legal standard and gave the treating physician's evidence substantial or considerable weight or found good cause not to do so. If we are to provide the parties with any sort of meaningful judicial review, we must be able to ascertain whether the ALJ correctly followed the law. Unable to divine this from the ALJ's opinion, we must reverse the district court and remand the case for reconsideration by the ALJ, who should evaluate all the evidence according to the respective weight required by law and should render a decision that will provide reviewing courts with the basis for determining that he applied the correct legal standards."); *cf. Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir.

1986) ("The ALJ must articulate his reasons for not giving weight to the diagnoses accompanying the test results.").

In this case, the Court cannot agree with plaintiff that the ALJ erred either in according more weight to the opinion of the examining psychologist, Dr. Tocci, than to the opinion of plaintiff's treating psychiatrist, Dr. Dansak, or in failing to articulate what weight, if any, he was assigning to Dr. Dansak's opinion. In this latter regard, it is certainly implicit in the ALJ's decision, in rejecting Dr. Dansak's opinion regarding plaintiff's mental RFC in favor of Dr. Tocci's mental RFC opinion (*see* Tr. 26-27), that the ALJ was according Dr. Dansak's mental RFC assessment little weight (*see id*.). Moreover, later in his decision, the ALJ made his implicit determination quite explicit. (*Id*. at 28-29 ("The undersigned notes that the claimant's representative asked the vocational expert whether the hypothetical individual could perform any of the claimant's past relevant work or any other work that exists in significant numbers in the national economy with the limitations set forth in Dr. Dansak's mental residual functional capacity assessment in Exhibit 15F. The vocational expert responded that the limitations set forth in this exhibit [would] restrict the individual to less than sedentary work. However, the undersigned *gave little weight* to Dr. Dansak's evaluation, as discussed above." (emphasis supplied).) In other words, the ALJ stated with the particularity required of him by the Eleventh Circuit that he was according little weight to Dr. Dansak's mental RFC assessment (Tr. 29; *see also* Tr. 26-27) and, furthermore, stated that he was assigning significant weight to Dr. Tocci's mental RFC findings (Tr. 26).

As for the first prong of plaintiff's "two-headed" argument, the Court finds that the ALJ articulated good cause for giving Dr. Dansak's opinion regarding plaintiff's mental RFC less weight than the mental RFC opinion of Dr. Tocci. (*See* Tr. 26-27.) The ALJ correctly noted that neither the evidence of record as a whole or Dr. Dansak's own findings in his treatment notes support the severity of limitations found by plaintiff's treating psychiatrist. (*Compare* Tr. 948 (Dansak's July 28, 2009 findings that plaintiff would have marked limitations in responding appropriately to supervision, co-workers, and customary work pressures and marked limitations in performing repetitive tasks and completing work related activities in a normal workday or workweek) *with* Tr. 1022 (July 29, 2009 medical treatment findings by Dansak included the following objective findings: "Alert, cooperative, oriented x 4, casually dressed, adequately groomed, affect appropriate, mood calm and pleasant, stream and content of thought are normal, memory and cognition are grossly intact, no s/h ideas or plans voiced, insight and judgment are good.") *and, e.g.,* Tr. 534-577, 586-590, 593-739, 924-935, 938, 993-997 & 1028-1035.) Accordingly, the Court finds no error in this regard. *See Lewis, supra,* 125 F.3d at 1440 ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their own medical records.").

Because plaintiff raises no other arguments and substantial evidence of record (*see, e.g.,* Tr. 534-577, 586-590, 593-739, 924-935, 938, 993-997 & 1028-1035) supports the ALJ's determination that plaintiff can perform those unskilled light jobs identified by

14

the vocational expert, the Court finds the ALJ's fifth-step denial of benefits is due to be affirmed.

## CONCLUSION

It is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 27th day of December, 2011.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**